1:26-mj-3091-RJS

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Adam W. Anderson, a Task Force Officer with the Drug Enforcement Administration ("DEA"), United States Department of Justice, being first duly sworn, depose and state under oath as follows:

1.      This Affidavit is offered in support of a Criminal Complaint and arrest warrant against Defendant Blayke CARTER, (hereinafter, "CARTER") for the following violation of federal law occurring on or about May 4, 2026, in Lorain County and the Northern District of Ohio, namely: Possession with the Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

## TRAINING AND EXPERIENCE

2.      I am a State Trooper with approximately eighteen years of law enforcement experience and have been employed by Ohio State Highway Patrol (OSP) since April 2017. In August 2025 I was promoted to the rank of Sergeant. I am currently assigned as a Task Force Officer (TFO) to the Drug Enforcement Administration (DEA) Cleveland Office and have been assigned since November 2020. I was employed by the City of Wooster Police Department, Wayne County, Ohio, prior to being employed as a StateTrooper. I have a Master of Science degree in Criminal Justice Administration and Management. I have received specialized training from the Drug Enforcement Administration, the Ohio State Highway Patrol Trooper Academy, the Medina County Law Enforcement Training Academy, and the Ohio Peace Officer Training Academy (OPOTA). I am currently certified as a State Trooper and am an OPOTA Certified State of Ohio Instructor and have been so since 2014. I have received training regarding the identification of controlled substances and the operation of drug trafficking individuals and organizations. I have further received training in the identification, organization and various

ways drug trafficking organization's structure and mask their operations.

3.      I have been involved in investigating numerous individuals involved in the manufacturing, distribution, and use of controlled substances in both the United States and Foreign Countries. I have successfully conducted investigations that have resulted in drug traffickers' arrests and the seizure of significant quantities of drugs, money, and weapons both in the United States and foreign countries. I have surveilled drug traffickers' operations and have interviewed numerous people personally involved in the sale, transport, and use of narcotics. Through this training and experience, I have become familiar with and have gained a thorough understanding of the methods, manner, and means used by individuals engaged in the unlawful manufacturing, trafficking, transportation, and use of controlled substances.

4.      I have gained knowledge that members and co-conspirators of complex drug trafficking organizations utilize various veiling methods and engage in activities in efforts to thwart the efforts of law enforcement personnel. In particular members of drug trafficking organizations commonly utilize multiple cellular phones and subscribe said phone numbers in the names of fictitious people or relatives. Members also utilize numerous vehicles, and exchange vehicles at irregular intervals, with said vehicles being registered to relatives, fictitious companies, or in the names of invented individuals. I also have experience recognizing members of drug trafficking organizations engaging in driving maneuvers that are designed to assist criminals in the possible identification of law enforcement personnel who are engaging in surveillance operations. I also know drug traffickers use multiple residences in an effort to thwartlaw enforcement by separating the fruits of the crimes, to different locations. I know it is common for drug traffickers to use apartments, in order to blend in with multiple other residences, making it difficult for law enforcement to locate their location. All of these activities are done in the hope that criminal activities will be disguised.

5.      Based on my training and experiences in other investigations, I have conducted numerous analyses of billing and toll records for telephones used by drug traffickers. I know drug trafficking is often furthered by using multiple cellular phones, multiple insulated contacts, and pre-paid cellular phones, which is also known as compartmentalization. The use of the telephones in this manner is designed to help avoid detection by law enforcement.

6.      I know based upon training and experience that drug trafficking and money laundering organizations routinely use a number of other operational techniques, designed and implemented to achieve two goals: first, the successful distribution of controlled substances and the subsequent collection of the proceeds of that illegal activity; and second, the minimization of the exposure of organization members, particularly those operating in management roles, from investigation and prosecution by law enforcement.

7.      I have participated in multiple drug cases, some of which have been Title III investigations, involving drug trafficking activities and have become familiar with the patterns of activity of drug traffickers, the types and amounts of profits made by drug dealers, and the methods, language, and terms that are used to disguise the source and nature of the profits from their illegal drug dealings.

8.      I also know from training and experience that drug traffickers periodically change, or "drop," their telephones and/or telephone numbers in an attempt to avoid law enforcement interception of their conversations. Moreover, it is my experience that narcotics distributors purposefully use multiple communication devices (for example, cellular telephones) to keep law enforcement from understanding the full scope of their own and/or their organization's illicit conduct, in the event that their communications are being intercepted. I also know that drug traffickers frequently use text messaging to communicate with other traffickers in

an effort to thwart law enforcement interception of communications.

9. Unless otherwise noted, wherever in this Affidavit, the Affiant asserts a statement was made, the Affiant's observations provided the information, or another special agent or law enforcement officer, or witness who had either direct or hearsay knowledge of that statement to whom the Affiant or others have spoken or whose reports the Affiant has personally read and reviewed. This Affidavit does not contain every piece of information known to Affiant and other investigators, but rather only information sufficient to establish probable cause to support the requested warrant.

## **PROBABLE CAUSE**

10. On May 4, 2026, at approximately 6:56 p.m., Ohio State Highway Patrol Trooper Jamie Santiago, was dispatched to State Route 2 westbound rest area, in between mile post 0 and mile post 1, Lorain County, Brownhelm Township, Ohio, for a traffic crash in an active construction zone. Upon arriving at the crash Trooper Santiago contacted the driver, of the crashed vehicle, identifying him as Blayke CARTER, (hereinafter, "CARTER"). While interacting with CARTER Trooper Santiago observed blood shot glassy eyes, strong odor of an alcoholic beverage, slurred speech, difficulty maintaining balance. Trooper Santiago conducted standardized field sobriety tests ("SFST"). At the conclusion of the SFST's it was determined CARTER was operating his motor vehicle while impaired by drugs and/or alcohol, under the Ohio Revised Code.

11. Trooper Santiago arrested and read CARTER his Miranda rights. During a search incident to arrest CARTER had the cell phone described herein as "Device" on his person. After placing CARTER in the rear of his patrol car, Trooper Santiago approached CARTERs vehicle and observed the mixture odor of raw and burnt marijuana. Due to the vehicle being in the traffic lane at the entrance to State Route 2 from the westbound rest area, a tow was requested.

4

12. During an administrative tow inventory of the vehicle the following items were found within the vehicle:

- (1) AR Rifle with 3 loaded magazines

- (3) Pistols with loaded magazines, 1 of which was located on the front passenger seat, in a fanny pack assessable to the driver while operating the motor vehicle.

- Approximately (1) kilogram of psilocybin mushrooms

- Approximately (2) kilograms of psilocybin chocolate

- 2 full sheets with over 2000 dosage units of LSD and (3) eye drop bottles filled with LSD.

- Approximately 167 THC edibles with varying weights

- Approximately 8 pounds of raw marijuana

- Approximately 170 THC vaporizers

- Approximately 229 pre-rolled marijuana cigarettes

- Approximately 3 pounds of THC wax

- Undetermined amount of U.S. Currency.

13. On May 6,2026, a presumptive preliminary (also known as field test) test was conducted on the eyedrop bottles and a dosage unit of the LSD blotter paper. Both of these items provided a presumptive positive test for LSD. The above-mentioned field test has been found to be reliable by affiant as used in prior unrelated investigations, and later confirmed with consistent laboratory results. The amounts of the above-described suspected controlled substances are consistent with distribution, as opposed to personal use, in Affiant's training and experience. Affiant knows in his training and experience that psilocybin and LSD, are Schedule I controlled substances.

5

## CONCLUSION

14.     Based on the facts set forth in this affidavit, I submit there is probable cause to believe that on or about May 4, 2026, in Lorain County and the Northern District of Ohio, Blayke CARTER committed the offense of Possession with Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1). Affiant, therefore, requests that this Court issue a criminal complaint and arrest warrant for Blayke CARTER.

Respectfully submitted,

Adam W. Anderson
Task Force Officer
Drug Enforcement Administration

Sworn to via telephone after submission by reliable electronic means. Per Crim. Rule 4.1, 41(d)(3) on this _6th_ day of May, 2026.

Reuben J. Sheperd, United States Magistrate Judge

6